IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Brent W. Cook, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14cv1776 (GBL/JFA) |
| | ) | |
| Pamunkey Regional Jail, et al., | ) | |
|     Defendants. | ) | |

MEMORANDUM OPINION

THIS MATTER comes before the Court upon defendants' Motions for Summary Judgment. This case concerns claims asserted by Brent W. Cook, a Virginia inmate proceeding pro se, filed pursuant to 42 U.S.C. § 1983, alleging that defendants violated his Eighth Amendment rights. The remaining defendants, Sergeant Berry, Sergeant Dority, and Officer Sletten, have each filed a Motion for Summary Judgment as well as memoranda of law with supporting exhibits. Plaintiff was given the Notice required by Local Rule 7(K) and the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Plaintiff did not file a response. The matter is now ripe for disposition. The issue before the Court is whether to grant defendants' Motions for Summary Judgment. The Court concludes that there is no genuine issue of material fact as to the claims against Sergeants Berry and Dority and, therefore, Sergeant Berry's and Sergeant Dority's Motions for Summary Judgment must be granted. The Court also concludes that there remains a genuine issue of material fact as to the claims against Officer Sletten and, therefore, his Motion for Summary Judgment must be denied, without prejudice to Officer Sletten filing a supplemental motion on the merits of plaintiff's claims against him.

## I. Factual Background

At all times relevant, defendants were employees of the Pamunkey Regional Jail ("PRJ"). On September 17, 2014, Sergeant Berry instructed Officers Sletten and Walker to take custody of plaintiff from the Hanover County Court Services deputies. Dkt. Nos. 26-4, 26-5.[1] When they arrived, plaintiff was being attended to by emergency service personnel who informed Officer Sletten that plaintiff could be restrained according to protocol and that they "could find nothing wrong with [plaintiff] per the evaluation process." Dkt. No. 26-5. Officer Sletten handcuffed plaintiff, and Officer Walker escorted plaintiff to the ambulance. Id. When plaintiff and the officers arrived at the ambulance, an unidentified woman approached from behind, yelling "Oh my God, my son! I must hold my son." Id. Officer Sletten stood between plaintiff and the woman and asked her to "stay clear." Id. Plaintiff became combative; therefore, Officer Sletten took control of plaintiff's right arm while Officer Walker took control of plaintiff's left arm. Id. Plaintiff then threatened to kill Officer Sletten upon his release. Id. Officer Walker accompanied plaintiff in the ambulance to the hospital while Officer Sletten followed in the jail transport vehicle. Id. Plaintiff was seen at the hospital and told, in front of Officer Sletten, that "all the tests came back normal." Id. Plaintiff was discharged and, while Officers Sletten and Walker were taking him back to the transport vehicle, plaintiff tried to fall to the floor. Id. Officers Sletten and Walker carried plaintiff to the transport vehicle where he refused to sit in the vehicle and became combative. Id. When the transport vehicle arrived at PRJ, plaintiff refused to exit the transport vehicle. Id. Officer Sletten placed plaintiff in an "escort hold and assisted him out of the vehicle." Id. Plaintiff began to resist, kicking off his left shoe and screaming. Id.

---

[1] Each Motion for Summary Judgment contains the same supporting exhibits.

Plaintiff went through the booking process and was immediately placed on "Pre-Hearing Detention"[2] and "charged with a 1-1 (Assault) for assaulting Officer Walker, and a 1-12 (Threatening Bodily Harm), for threatening Officer Sletten and 1-15 (Disobeying a Direct Order), for refusing to exit the vehicle after he was told to do so several times." Dkt. Nos. 26-1 Tab 4, 26-4. A disciplinary hearing was scheduled for September 19, 2014, at 6:30am; however, based on comments made by plaintiff at the hearing, he was placed on level 1 suicide watch for seven days instead. Dkt. Nos. 26-4, 26-6. It is PRJ's policy to not conduct disciplinary hearings while an inmate is on suicide watch. Dkt. No. 26-4. On September 26, 2014, plaintiff was given notice of a disciplinary hearing scheduled for September 29, 2016. Dkt. No. 26-1, Tab 5. Plaintiff was found guilty on all three charges at the disciplinary hearing and was sanctioned to 45 days in disciplinary detention, which is defined in the PRJ policy as "[s]pecial management bed assignment that separates an inmate from the general population for a specific period of time for a rule violation." Dkt. No. 26-1, Tabs 6, 7.

PRJ policy provides that, when an inmate is transferred to segregation, medical staff is immediately notified, the inmate's medical file is reviewed to determine if the inmate would be medically and mentally able to be in segregation, and each inmate is visited by a health care provider at least once a day. Dkt. No. 26-1, Tab 7. Additionally, pursuant to PRJ policy 2A-52, plaintiff was observed three times every hour while in disciplinary segregation. Dkt. No. 26-4.

---

[2] Pre-hearing Detention is defined as "[c]onfining an inmate to lockdown status prior to a disciplinary hearing if the inmate poses an immediate threat to the safety and security of the facility, staff, or other inmates." Dkt. No. 26-1, Tab 7. PRJ policy 2A-44 allows "[t]he Facility Administrator or designee [to] order immediate segregation when it is necessary to protect the inmate or others. The action is reviewed within seventy-two (72) hours by the appropriate authority." Id.

Plaintiff alleges that Sergeant Berry placed him "in solitary knowing [of plaintiff's] mental condition bi polar [sic] manic depressed anxity [sic] disorder and PTS," causing him "severe mental distress;" however, Sergeant Berry states she had no personal knowledge that plaintiff had a mental health condition. Dkt. Nos. 10, 26-4.

Plaintiff also alleges that Sergeant Dority was notified that plaintiff's shoes were medically necessary for his bone spurs, but that he refused to give plaintiff his medical shoes, causing plaintiff "unfixable pain to [his] foot." Dkt. No. 10. On September 19, 2014, plaintiff submitted a Medical Request Form asking for pain medication "for lower back and foot bone spurs;"[3] Dkt. No. 11-1, however, Sergeant Dority does not recall ever speaking to plaintiff about medical shoes or bone spurs. Dkt. No. 26-6. In fact, Sergeant Dority was not on duty on September 17, 2014, the day plaintiff was brought to PRJ. Id. Additionally, when inmates are processed, their shoes are removed and placed in a property bag and then screened by a nurse who returns the shoes to the inmate if they are authorized to have them by intake staff. Id. Sergeant Dority is not a part of the intake staff. Id.

Finally, plaintiff claims that Officer Sletten "slammed [plaintiff's] thumb in the trey [sic] slot" on September 30, 2014, causing severe trauma to plaintiff's hand as well as mental anguish. Dkt. No. 10. Plaintiff filed an Inmate Request Form that day asserting these claims. Dkt. No. 11-1. On October 1, 2014, at approximately 2:30 pm, Officer Sletten went to speak with plaintiff, at plaintiff's request. Dkt. No. 26-5. Officer Sletten

> opened the tray slot and kneeled down to the side of the door to speak to [plaintiff]. [Plaintiff] pushed his disciplinary finding sheet out of the tray slot. [Officer Sletten] then handed the paperwork back to [plaintiff], shut and locked the tray slot door and walked away. [Plaintiff] yelled, "Hey, my paperwork is stuck in the door." [Plaintiff] was sitting on the bunk when [Officer Sletten] returned to [plaintiff's cell] and opened the tray slot allowing the papers to fall

---

[3] The writing immediately following this request is illegible.

inside the cell.  [Officer Sletten] then closed the tray slot and exited the unit. [Plaintiff's] fingers were not in the trey [sic] slot when [Officer Sletten] closed it.

Id.  That same day, at around 3:00 pm, plaintiff's right thumb was x-rayed.  Dkt. No. 26-1. The results came back normal.  Id.  On October 3, 2014, plaintiff told the medical staff that he "hit is hand on the door because he [had] not rcvd [sic] his glasses."  Id.  X-rays of plaintiff's right hand taken on October 4, 2014, showed normal results.  Id.

Plaintiff is alleging that Sergeants Berry and Dority violated his Eighth Amendment rights by showing deliberate indifference to a serious medical need, that Sergeant Berry violated his Eighth Amendment rights based on his conditions of confinement, and that Officer Sletten violated his Eighth Amendment right by using excessive force.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  The moving party bears the burden of proving that judgment on the pleadings is appropriate.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution.  Id. at 322.  Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the nonmoving party to point out the specific facts that create disputed factual issues.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  Those facts which

the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party. Matsushita, 475 U.S. at 587.

### III. Analysis

Summary judgment in favor of Sergeants Berry and Dority is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that they did not violate plaintiff's Eighth Amendment rights. There remains a genuine issue as to material facts regarding the excessive force claim against Officer Sletten.

#### A. Deliberate Indifference to Plaintiff's Medical Needs

Despite plaintiff's allegations to the contrary, the Court finds that Sergeants Berry and Dority were not deliberately indifferent to plaintiff's medical needs. To prevail on a claim for deliberate indifference that rises to an Eighth Amendment violation, plaintiff must establish facts sufficient to show that a jail official was deliberately indifferent to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. See, e.g., Hall v. Holsmith, 340 Fed. App'x 944, 947 & n.3 (4th Cir. 2009) (holding that flu-like symptoms did not constitute a serious medical need); Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987)

(determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious).

Second, a plaintiff must allege that the defendant acted with deliberate indifference to his serious medical need. To act with deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). An assertion of mere negligence or malpractice is not enough to state a constitutional violation; instead, a plaintiff must allege and demonstrate "[d]eliberate indifference . . . by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (recognized in Sharpe v. S. Carolina Dep't of Corr., 621 F. App'x 732, 733 (4th Cir. 2015) as overruled on other grounds by Farmer v. Brennan, 511 U.S. 825 (1994)); see also Daniels v. Williams, 474 U.S. 327, 328 (1986). In other words, a plaintiff must show that defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id.

### I. Sergeant Berry

Sergeant Berry does not appear to contest that plaintiff's mental health issues present a serious medical need; however, plaintiff fails to establish the second prong of the deliberate indifference test. Plaintiff alleges that Sergeant Berry knew about his mental health diagnoses; however, Sergeant Berry states that she was unaware that plaintiff had any mental health issues. Regardless, there is no showing of deliberate indifference in light of PRJ's policy of (1) immediately notifying medical staff when an inmate is transferred to segregation so that the medical staff will review the inmate's medical file to determine if the inmate would be medically and mentally able to be in segregation, (2) having each inmate visited by a health care provider at

least once a day, and (3) observing plaintiff three times every hour while in disciplinary segregation. Based upon this evidence, the Court finds that Sergeant Berry was not deliberately indifferent to plaintiff's medical need.

### II. Sergeant Dority

It is undisputed that plaintiff was suffering from pain related to a bone spur in his foot while he was incarcerated; however, assuming, without deciding, that this pain presented a serious medical condition, plaintiff fails to establish that Sergeant Dority was deliberately indifferent to this medical need. Specifically, plaintiff has not shown that Sergeant Dority was "subjectively aware of the risk of harm to [plaintiff], shown either through direct evidence or circumstantial evidence of actual knowledge." Strickland v. Halsey, 638 F. App'x 179, 185 (4th Cir. 2015). Sergeant Dority does not recall ever speaking to plaintiff about medical shoes or bone spurs. Additionally, Sergeant Dority was not on duty when plaintiff was booked at PRJ and his shoes were taken, and Sergeant Dority's duties are not related to the intake process. While plaintiff did complain of pain related to bone spurs while he was incarcerated, there is no evidence that Sergeant Dority was made aware of plaintiff's condition, or that he should have been aware of plaintiff's condition. In fact, even if Sergeant Dority had been made aware of plaintiff's complaint, Sergeant Dority has no authority related to plaintiff's medical treatment and access to medically necessary shoes. Thus, there is no direct or circumstantial evidence establishing that Sergeant Dority subjectively knew about plaintiff's bone spurs or that he was deliberately indifferent to plaintiff's medical need. Based on the undisputed evidence, the Court finds that Sergeant Dority was not deliberately indifferent to plaintiff's bone spurs and related pain.

## B. Conditions of Confinement

The Court finds that Sergeant Berry did not violate plaintiff's Eighth Amendment rights by placing him in disciplinary segregation. To establish a claim for cruel and unusual punishment due to conditions of confinement, a plaintiff must allege facts sufficient to show (1) an objectively serious deprivation of a basic human need, that is, one causing serious physical or emotional injury, and (2) that prison officials were deliberately indifferent to that need. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 198 (1991). To meet the first prong, Plaintiff must allege facts sufficient to show that the condition complained of was a "sufficiently serious" deprivation of a basic human need. Id. Only extreme deprivations will make out an Eighth Amendment claim, and it is Plaintiff's burden to allege facts sufficient to show that the risk from the conditions of his confinement was so grave that it violated contemporary notions of decency and resulted in serious or significant physical or emotional injury. Hudson v. McMillian, 503 U.S. 1, 8 (1992); Strickler v. Waters, 989 F.2d 1375, 1379-81 (4th Cir. 1993). To meet the second prong, Plaintiff must allege facts sufficient to show that the defendants knew of circumstances from which an inference could be drawn that a "substantial risk of serious harm" was posed to plaintiff's health and safety, that they drew that inference, and then disregarded the risk posed. Farmer, 511 U.S. at 837.

Plaintiff alleges that he suffers from "bi polar [sic] manic depressed anxity [sic] disorder and PTS" and that his confinement in disciplinary segregation caused him "severe mental distress," with no further explanation. Assuming, without deciding, that plaintiff's mental distress constitutes a serious emotional injury, plaintiff fails to establish that Sergeant Berry deliberately disregarded any risk to plaintiff's health. First, as previously discussed, there is no evidence that Sergeant Berry knew of circumstances from which an inference could be drawn that plaintiff faced a substantial risk of serious harm to his health and safety, that she drew that

9

inference, and that she then disregarded the risk posed. In fact, PRJ policy provided that plaintiff was (1) evaluated by medical staff to determine if he was medically and mentally able to be in segregation, (2) seen by a health care provider at least once a day, and (3) observed three times every hour while in disciplinary segregation. Plaintiff does not contend that these policies were not followed. Therefore, the evidence does not show that any risk to plaintiff that may have been present was disregarded. Based on the undisputed evidence, the Court finds that Sergeant Berry was not deliberately indifferent to any alleged deprivation of plaintiff's basic human needs.

### C. Excessive Force

Officer Sletten's Motion for Summary Judgment must be denied, without prejudice to him re-filing a properly supported motion for summary judgment. In determining whether a complaint states an Eighth Amendment claim that a defendant used excessive force, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also, Whitley v. Albers, 475 U.S. 312, 320-21 (1986). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." Hudson, 503 U.S. at 9.

The extent of injury suffered by the inmate is relevant to the Eighth Amendment inquiry, both because it may suggest whether the use of force plausibly could have been thought necessary in a particular situation, Whitley, 475 U.S. at 321, and because it may provide some indication of the amount of force applied. Wilkins v. Gaddy, 559 U.S. 34, 36 (2010) (rejecting the notion that an excessive force claim involving only de minimis injury is subject to automatic dismissal). The Eighth Amendment generally excludes from constitutional recognition de minimis uses of physical force, Hudson, 503 U.S. at 9, and an inmate who complains of a "push or shove" that

10

causes no discernable injury "almost certainly" fails to state a valid excessive force claim. Id. (internal citations omitted). Nonetheless, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 559 U.S. at 38.

On September 30, 2014, plaintiff submitted, and an officer at PRJ received, an Inmate Request Form in which plaintiff stated "Request Greivence [sic] on OFF [sic] [illegible] Sletton [sic] for slamming my thumb in trey [sic] slot then laughing at me." Dkt. No. 11-1. Officer Sletten stated that at approximately 2:30 pm on October 1, 2014, he spoke with plaintiff while plaintiff was in his cell and plaintiff's "fingers were not in the trey [sic] slot when [Officer Sletten] closed it;" however, plaintiff's right thumb was x-rayed that same day at 3 pm.

Officer Sletten did not addressed plaintiff's allegations regarding September 30, 2014. There is also no explanation for why plaintiff's right thumb was x-rayed approximately 30 minutes after Officer Sletten spoke with plaintiff on October 1, 2014. Therefore, genuine issues as to material facts remain and Officer Sletten's Motion for Summary Judgment will be denied, without prejudice to his ability to re-file a motion for summary judgment, with proper support, as to plaintiff's excessive force claim.

### IV. Qualified Immunity

Sergeants Berry and Dority, to the extent that they can be held liable in their personal capacity, also argue that, even if they did violate plaintiff's Eighth Amendment rights, they are entitled to qualified immunity. Under the qualified immunity doctrine, defendants performing discretionary functions and sued in their individual capacity "are shielded from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A

court considering a qualified immunity defense must make two inquiries: (1) whether the facts, when viewed in the light most favorable to the plaintiff, establish that the defendants committed a constitutional violation; and (2) whether such a right was clearly established at the time of the defendant's conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). A court does not need to address these inquiries in any particular order, and a defendant is entitled to qualified immunity if the court resolves either element in favor of the defendant. Pearson v. Callahan, 555 U.S. 223, 225 (2009).

As discussed above, the evidence shows that Sergeants Berry and Dority did not violate plaintiff's Eighth Amendment rights. Accordingly, Sergeants Berry and Dority are entitled to qualified immunity.

## V. Conclusion

For the foregoing reasons, Sergeant Berry's and Sergeant Dority's Motions for Summary Judgment must be granted and Officer Sletten's Motion for Summary Judgment must be denied, without prejudice. An appropriate Order shall issue.

Entered this ____ day of _____ October _____ 2016.

Alexandria, Virginia

/s/
Gerald Bruce Lee
United States District Judge